## UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ERIC BERNARD (#R-25398), a/k/a TERRELL KING, | |
| Plaintiff, | No. 20-cv-50412 |
| v. | |
| ILLINOIS DEPARTMENT OF CORRECTIONS, and WEXFORD HEALTH SOURCES, INC. | Hon. Judge Iain D. Johnston |
| | Magistrate Judge Margaret J. Schneider |
| Defendants. | |

### DEFENDANT WEXFORD'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

NOW COME the Defendants, WEXFORD HEALTH SOURCES, INC., by and through their attorneys, CASSIDAY SCHADE, LLP, and in reply to Plaintiff's Brief in Opposition of Defendant's Motion to Dismiss, states as follows:

I. Plaintiff's Response Fails to Recognize the Controlling and Dispositive Case Law in Defendant's Favor and Concedes Limited Legal Foundation for his Argument.

In his Response brief, Plaintiff argues for a novel standard for evaluating ADA-claims in response to a motion to dismiss but fails to recognize or address the significant authority cited by Wexford in its Motion to Dismiss that Wexford is not a proper defendant in an ADA or RA claim. See e.g., *Bernard v. Baldwin*, No. 20-cv-5368, 2022 U.S. Dist. LEXIS 50351 at *18–19 (N.D. Ill., Mar. 2022); *Bradley v. Wexford, Inc.*, No. 19-cv-00752-SMY, 2019 U.S. Dist. LEXIS 131560 at *3 (S.D. Ill. Aug. 6, 2019) (collecting cases); *Hogle v. Baldwin*, 2017 U.S. Dist. LEXIS 150753 at *6 (C.D. Ill. Sept. 18, 2017) ("Plaintiff's claim under Title II of the ADA fails because Wexford is not a public entity."); *Wilkerson v. Hammond*, 2013 WL 5950820 (S.D. Ill. Nov. 7, 2013); *Maxwell v. South Bend Work Release Center*, 787 F. Supp. 2d 819, 821 (N.D. Ind. 2011) (finding that "a

1

private company does not become a public entity for Title II purposes merely because it has a business or contractual relationship with a public entity."). Given the substantial amount of supporting case law from the District Courts throughout the Seventh Circuit, it is therefore confusing that Plaintiff attempts to argue that "Defendants do not rely on a single published Seventh Circuit case for their arguments, nor could they." [Dkt 107, p. 5, ¶1]. It is further confusing in light of Plaintiff's own reference to Defendant Wexford's use of *Bernard v. Baldwin*, No. 20-cv-5368, which is, in fact, a Seventh Circuit case. *Id*.

Plaintiff makes this reference in an effort to distinguish his other case from the present case, however; the ultimate message from that case is the same.[1] "The 'only proper defendant in a claim under the ADA or Rehabilitation Act is the state agency (or state official acting in his or her official capacity).'" *Bernard v. Baldwin*, 2022 U.S. Dist. LEXIS 50351, *18, 2022 WL 847628, quoting *Bradley v. Baldwin*, No. 19-CV-0205-NJR, 2019 U.S. Dist. LEXIS 74426, 2019 WL 1953962, at *4 (S.D. Ill. May 2, 2019).

Despite the established authority to the contrary, Plaintiff spends a significant portion of his Response arguing for a new interpretation of the ADA as it applies to Wexford. Incredibly, Plaintiff asserts that the courts within the Seventh Circuit have not yet determined whether such claims apply to private corporate defendants such as Wexford under these facts.[2] Assuming *arguendo* that this contention were true, such a proposition would still warrant dismissal of the ADA claims as applied to Defendant Wexford. The appropriateness of a pleading is determined by its alleged facts, and novel legal theories need not be alleged. See e.g., *Hostrop v. Board of Junior College Dist. No. 515*, 523 F.2d 569 1975 U.S. App. LEXIS 12646 (7th Cir. 1975).

---

[1] It should be noted that Defendant Wexford was also a named party in that case—to the extent an entity like Wexford could be named in an ADA/RA claim, no such legal authority was promulgated by this District in that case.

[2] This is a contention Defendant Wexford opposes and relies on the Seventh Circuit caselaw cited throughout the Motion to Dismiss and in this reply.

However, Plaintiff seems to have turned this proposition on its head, and, while failing to clarify the factual basis for an ADA claim against Wexford, instead provides legal theories they believe this Court should use. In support of this, Plaintiff states throughout his Response that the law is "unsettled" and that this entitles them to survive the motion to dismiss. However, this is precisely why the motion to dismiss should be granted: "Assuming arguendo that this court were to find, after a trial, that the [alleged actions] were [in violation of law], defendants could not be charged with a knowledge of the outcome of a development in [ADA] law. *Rasmussen v. Lake Forest*, 404 F. Supp. 148, 158, 1975 U.S. Dist. LEXIS 15366, *29-30, citing *Slate v. McFetridge*, 484 F.2d 1169, 1174 (7th Cir. 1973). Here, Wexford cannot be held to answer for novel developments in the law that, frankly, are not actually novel since the applicability of the ADA to a private vendor of medical services such as Wexford has already been establish. Indeed, as regularly held throughout the District Courts of the Seventh Circuit, Wexford is not liable to Plaintiff under the ADA, and his cause of action should be dismissed with prejudice.

    II.    <u>Plaintiff's Response Fails to Rebut Defendant's Motion to Dismiss Count II, as his Pleadings Remain Insufficient to Sufficiently State a Cause of Action Against Wexford Under the Rehabilitation Act.</u>

Plaintiff is correct to concede that entities who solely receive federal funds indirectly through state contracts are not liable under the Rehabilitation Act. See e.g., *Grzan v. Charter Hosp. of Nw. Indiana*, 104 F.3d 116, 120 (7th Cir. 1997) (abrogated on other grounds). Rather, Plaintiff contends that "Wexford does not affirmatively express that it receives no direct federal funds." [Pltf. Resp. Brief, p. 14, Section II, ¶1]. Wexford does not need to make such an affirmative expression, however, as Plaintiff has never made such an allegation. See e.g., [Dkt. 77, ¶ 113] (only alleging, in conclusory fashion, that Defendant Wexford receives federal funds generally).

Moreover, Plaintiff's bald, unadorned, and conclusory allegation that "Wexford receives federal funding" is precisely the kind of allegation that fails to meet federal pleading standards under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 622 (2009). Here, Plaintiff fails to make any other plausible allegations about what branch of the federal government gives Wexford "federal funding," when it was given, how much was given, or why. Given the breadth of Plaintiff's conclusory allegation, a mere tax refund from the IRS would be sufficient to amount to "federal funding," but clearly not everyone who receives a tax return is subject to the Rehabilitation Act. As the court is aware, Wexford provides medical services to inmates in the Illinois Department of Corrections pursuant to a contract with the State of Illinois. Again, Wexford's receipt of funds from the State of Illinois does not subject it to liability under the Rehabilitation. Plaintiff's conclusory allegations about "federal funding" is simply inadequate to meet federal pleading standards, and therefore, fails to state a cause of action against Wexford under the RA. *Eby v. Okezie*, No. 19 C 8404, 2021 U.S. Dist. LEXIS 172595 at *6 (N.D. Ill. Sept. 13, 2021) (citing *Grzan v. Charter Hosp. of Nw. Ind.*, 104 F.3d 116, 120 (7th Cir. 1997)); *Gallagher v. Croghan Colonial Bank*, 89 F.3d 275, 278 (6th Cir. 1996)) ("[C]overage of the Rehabilitation Act does not follow federal aid past the intended recipient to those who merely derive a benefit from the aid or receive compensation for services rendered pursuant to a contractual arrangement."); *Wesley ex rel. Wesley v. Armor Corr. Health Servs., Inc.*, No. 19-CV-0918, 2019 U.S. Dist. LEXIS 203045 at *4 (E.D. Wis. 2019); *Boyden v. Conlin*, No. 17-CV-264-WMC, 2018 U.S. Dist. LEXIS 79753 at *8 (W.D. Wis. 2018). Accordingly, Plaintiff's RA claim against Wexford should be dismissed with prejudice.

    III.    <u>Wexford and the Dixon Correctional Center Are Not "Places of Public Accommodation" Within the Meaning of Title III of the ADA.</u>

Plaintiff contends that Defendant Wexford may be considered a "place of public accommodation," however; this fails largely due to Defendant Wexford not being a place at all. Defendant Wexford is a Pennsylvania corporation that provides medical services within IDOC facilities. Plaintiff's Response provides several examples of entities that fall under Title III liability and makes numerous citations to case law and statutory authority. See e.g. *PGA Tour Inc. v. Martin*, 532 US 661 (2001); DOJ Technical Assistance Manual to Title III; *Tatum v. Nat'l Collegiate Athletic Ass'n*, 992 F. Supp. 1114, 1119–21 (E.D. Mo. 1998); *Ganden v. Nat'l Collegiate Athletic Ass'n*, Case No. 96–C–6953, 1996 WL 680000, at *11 (N.D. Ill. Nov. 21, 1996); *Butler v. Nat'l Collegiate Athletic Ass'n*, Case No. C96–1656D, 1996 WL 1058233, at *4–5 (W.D. Wash. Nov. 8, 1996). All of these examples suffer from the same common defect—all of these citations involve a private entity owning and operating *physical places (i.e. facilities)*. See e.g., *Ganden v. NCAA*, 1996 U.S. Dist. LEXIS 17368, *22 (N.D. Ill. November 19, 1996). Plaintiff has not alleged, nor could they plausibly allege, that Wexford "owns or operates" IDOC facilities, or that such highly secured facilities (used to house convicted criminals) are "places of public accommodation."

Furthermore, Plaintiff's citations of caselaw relating to prison medical providers is readily distinguishable from the instant case. Most readily distinguishable is Plaintiff's use of *Hernandez v. Cnty. of Monterey*, 70 F. Supp. 3d 963, 977 (N.D. Cal. 2014). In *Hernandez*, the court found that the defendant medical provider was the "'sole provider' of health services in jail," and that the plaintiff could proceed on his Title III claim. *Id*. By contrast, Plaintiff has not alleged, nor could he plausibly allege, that Wexford is the sole healthcare provider in IDOC facilities. Indeed, Plaintiff's own complaint names the IDOC as a defendant, and as the court is likely aware, the

IDOC employs its own healthcare staff alongside Wexford's, including a Health Care Unit Administrator that oversees the functioning of the healthcare unit at the Dixon Correctional Center. Plaintiff also alleges that he was provided with medical care and treatment at facilities not affiliated with Wexford, including University of Illinois Hospital ("UIC") and Schwab Rehabilitation Hospital ("Schwab"). [Dkt. 77 at ¶¶7, 19–20]. In short, Plaintiff's case is readily distinguishable from *Hernandez*, as there are no allegations that Wexford is the sole provider of medical services within the IDOC; there are no allegations that it has exclusive and sole control of the Dixon Correctional Center or the prison's health care unit.

Plaintiff's reliance on the non-precedential, out-of-district cases of *Saldana v. Crane*, 2013 WL 4747961 (D. Minn. 2013) and *Whitehurst v. Lackawanna Cnty.*, 2020 WL 6106616 at *11, n. 9 (M.D. Pa. 2020) are similarly misplaced, and neither case stands for the proposition that an entity akin to Defendant Wexford is liable under Title III of the ADA. More specifically, the *Whitehurst* citation, and indeed the entire case, makes no reference to Title III of the ADA, whereas the *Saldana* case specifically found the defendant medical providers not liable under Title III of the ADA. Lastly, Plaintiff's reliance on *Stafford v. Wexford of Indiana, LLC*, No. 117CV00289JMSMJD, 2017 WL 4517506, at *3 (S.D. Ind. Oct. 10, 2017) is out-of-district and is not authoritative. Moreover, even if it were, the *Stafford* case affirmatively holds that entities such as Wexford are not liable under Title II of the ADA. See *Stafford v. Wexford of Ind., LLC*, 2017 U.S. Dist. LEXIS 166994, *6, 2017 WL 4517506 (S.D. Ind. October 10, 2017) ("Wexford cites to Title II of the ADA for the proposition that Title II "prohibits discrimination by public entities, such as state and local governments." Plaintiffs concede this legal principle[… .]") (internal citations omitted). To the extent this Court deems *Stafford* illustrative, Wexford urges this court to reach a similar conclusion.

6

In conclusion, Plaintiff's arguments in his response brief are unavailing. Plaintiff's case law is distinguishable, as nearly all the cases he cites involve defendants who exclusively own and operate physical medical facilities. To be sure, Wexford is not a physical facility but rather a vendor who provides medical staff to support the IDOC's operation of the Dixon Correctional Center's healthcare unit. Further, Wexford's provision of medical staff working alongside IDOC medical staff simply does not amount to the exclusive "control" over the Dixon Correctional Center such that Wexford could be held liable under the ADA or RA. As such, Plaintiff's argument should be rejected, and this cause of action should be dismissed with prejudice.

IV. <u>Even If the ADA and RA Applied to Wexford, Plaintiff Has Failed to Adequately Plead Conduct that Amounts to Violations of Those Statutes.</u>

Despite the extensive case law provided by Plaintiff on deprivations of medical services in the correctional system, all of these citations suffer from a similar and fundamental flaw—all the cited cases involve a *public entity*. See [Dkt. 107, p. 19-21]. As stated in Wexford's Motion to Dismiss, and previously within this Reply, Wexford is not the sort of public entity that falls under the ADA, regardless of the alleged deprivations Plaintiff claims. As such, the alleged deprivations would not constitute ADA or RA violations. Plaintiff's Complaint should therefore be dismissed in its entirety.

> **A.** *Plaintiff's complaint and brief in opposition do not sufficiently differentiate between medical devices and medical treatment.*

Nevertheless, even if the ADA and RA applied to Wexford, Plaintiff has failed to sufficiently plead a violation of those statutes. Among Plaintiff's arguments raised in his Response brief is that ADA assistive devices are distinguishable from medical treatment. Without greater specificity as to the nature of the generic devices requested, it cannot be said that the devices are distinguishable from medical treatment. See e.g., *Nesbitt v. Williams*, 2017 U.S. Dist. LEXIS

7

41087, at *7 (N.D. Ill March 21, 2017) (a request for a softer mattress to address inmate's pain was a form of treatment that did not fall under the ADA). Plaintiff's distinction is further complicated by the face of Plaintiff's complaint, which states that Defendants denied Plaintiff "the comprehensive assistive devices <u>required to improve Mr. Bernard's functioning.</u>" [Dkt. 77, p. 5, ¶ 25] (emphasis added). To the extent Plaintiff refers generally and vaguely to "ADA assistive devices," such general allegations fail to meet federal pleading standards and do not necessarily amount to a violation of the ADA or RA. See generally, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 622 (2009). Further, Plaintiff does not allege that he was not provided with *any* sort of assistive devices, but rather, he complains that he was provided with assistive devices that he personal disliked and felt were inadequate. Such a claim is not an ADA or RA claim, but an Eighth Amendment claim that, unsurprisingly, Plaintiff is already litigating elsewhere.

### B. Plaintiff has not alleged a denial of access to prescription medication due to impermissible discrimination.

In his Response, Plaintiff discusses how access to mental health medications qualifies as a "program, service or activity covered by the ADA." [Dkt. 107, p. 28]. Among these grievances is an issue with the mental health medication he has been provided while confined, including a discontinuance from two mental health medications (lithium and prazosin) he was prescribed. [Dkt. 77 p. 12, ¶ 67]. However, it is critical to distinguish the nature of the change. Plaintiff's complaint does not allege that he was denied access to all mental health medications, rather; it only claims a discontinuance from two specific types of medication. This is not a denial of access to the program that is mental health medication access, but rather a discontinuance from a uniquely prescribed medication—something that falls squarely within the realm of "treatment." Moreover, Plaintiff's complaint details the reason why his medications were discontinued—because he was

8

non-compliant with taking his lithium and prazosin. Clearly, Plaintiff's choice not to take his prescribed medications is not "discrimination" or denial of access to rehabilitation services, and to conclude otherwise would be completely irrational.

Plaintiff also completely fails to allege or explain how his mental health treatment is different from any other inmates' mental health treatment is the result of impermissible discrimination. Plaintiff fails to grasp the difference between specialized treatment *necessitated* by an individual's unique disability, and treatment that is discriminatory given a difference in application between an able-bodied individual and one who is disabled. Indeed, in Plaintiff's world, anything that happens to him is "discrimination" simply because he is physically disabled, not because he is the victim of actual discrimination.

As with the entirety of his case, Plaintiff attempts to conflate his dissatisfaction with his mental treatment with "discrimination" in providing mental health treatment. These two are separate concepts that Plaintiff cannot simply ignore. Here, Plaintiff has not alleged any sort of discrimination in his mental health treatment, but rather a unique change in prescription based on his non-compliance with his treatment plan at that time. Accordingly, Plaintiff's cause of action should be dismissed with prejudice.

### C. Plaintiff failed to sufficiently allege impermissible discrimination under the ADA or RA in his Complaint or Response Brief

Plaintiff's Complaint fails to allege impermissible discrimination in his treatment at the Dixon Correctional Center. Here, Plaintiff attempts to utilize two different ADA standards interchangeably. At once, Plaintiff claims that he was discriminated against based on his disabilities while also claiming that the Defendants failed to accommodate his disabilities. Compare e.g., [Dkt 77, ¶11, 115 and Dkt. 77, ¶108, 109]. As part of his Response Brief, Plaintiff makes the argument that Defendants, in requiring Plaintiff to show he was discriminated against

9

through adverse and unequal treatment in comparison to non-disabled inmates, sets an impossible pleading standard. See [Dkt. 107, p. 23-26]. This is not so—Defendants are simply recognizing the differences in how discrimination may be shown under the ADA.

> [A] failure to accommodate claim is separate and distinct from a claim of discriminatory treatment under the ADA. In fact, the two types of claims are analyzed differently under the law. Therefore, they are not like or reasonably related to one another, and one cannot expect a failure to accommodate claim to develop from an investigation into a claim that a [party] was t[reated adversely] because of a disability.

*Green v. National Steel Corp.*, 197 F.3d 894, 898 (7th Cir. 1999) (citations omitted). With this distinction in mind, Plaintiff's contention that requiring a showing of discrimination when compared to others presents an impossible pleading standard is incorrect. Of course, it is unsurprising that Plaintiff cannot allege that other, able-bodied inmates receive the same, but different kind of treatment that he receives. For example, able-bodies inmates do not receive diaper changes before, during, or after court writs; nor do they receive assistance with their daily hygiene. Here, Plaintiff cannot allege impermissible discrimination, because the things he complains about are unique to his physical disabilities, not things that are available to all inmates but are denied to him *because* of his disability.

Further, a close examination of the factual substance for his complaint shows that Plaintiff is complaining about various incidents and "services" that either have nothing to do with Wexford, or fail because they do not amount to violations of the ADA or RA. For example:

- Plaintiff's complaint that he was "denied" a return to Schwab rehabilitation hospital it not discrimination, it is merely his dissatisfaction with his treatment;

- Plaintiff's dissatisfaction with his "Hoyer lift" does not amount to discrimination, as able-bodied inmates do not use "Hoyer Lifts", and his complaints about the condition of the lift are merely a dissatisfaction with his treatment;

- The condition of a cushion on his "geri chair" is merely a dissatisfaction with his treatment, and does not plausibly evidence discrimination against him as able-bodied individuals do not use "geri chairs";

- Wexford—a vendor of medical services—has no involvement or control over "yard/outdoor activities, gym, recreation, educational classes, or religious services" provided by the IDOC;

- Plaintiff's complaints about his dissatisfaction with the assistance he receives for his hygiene needs does not plausibly amount to impermissible discrimination, as able-bodied individuals do not receive assistance with such needs;

- Wexford also has no role in whether inmates have access to "legal assistance and courtroom access", nor does it have a role in whether inmates have access to the prison's law library, nor does it have any role in assisting Plaintiff with transporting his legal papers;

- Wexford also has no role in the actual transportation of inmates to court hearings or medical appointments, and have no role in cleaning an inmate's soiled garments outside the walls of the Dixon Correctional Center, regardless of whether the inmate is disabled or not;

- Plaintiff's complaints about his dental treatment and demands for off-site dental treatment are merely complaints about the adequacy of his treatment;

- Wexford has no role in allowing Plaintiff access to day rooms, recreational areas, visits with his family members, video calls, or providing an "ADA-compliant phone";

- Wexford has no role in providing Plaintiff with recreational activities, religious programming, outdoor activities, educational programming, visitation and telephone services, or legal services.

In conclusion, the allegations Plaintiff makes in his Complaint and his Response brief fail to amount to deprivations and discriminatory treatment that amount to violations of his ADA and RA statutory rights. Because of the nature of Wexford and the limited services it provides, the alleged deprivations do not amount to ADA or RA violations as Plaintiff has plead. Moreover, deprivations, changes in medication based on non-compliance, or dissatisfaction with the measures Wexford has taken are not synonymous with discrimination—Plaintiff must actually allege discriminatory treatment to plead an ADA or RA violation based on discriminatory treatment.

11

Here, Plaintiff has not, and cannot plausibly do so, because the things he complains about are unique to his own medical condition, and are not things that able-bodied inmates have access to. Accordingly, even if the court were to find that the ADA and RA apply to Wexford, Plaintiff has simply failed to allege impermissible discrimination or a denial of services by Wexford, nor could he, and his cause of action should be dismissed with prejudice.

> V. Plaintiff's Interpretation of *Hill v. Madison Cnty.*, is Flawed, and Indicates that this Court May and Indeed Should Assess a Strike to Plaintiff Under the Prisoner Litigation Reform Act Should it Dismiss the Instant Action.

Plaintiff believes it would be improper for the Court to assess him a strike as part of the dismissal of this case, and cites *Hill v. Madison Cnty.,* in reliance. *Hill v. Madison Cty.*, 983 F.3d 904, 906, 2020 U.S. App. LEXIS 40088, *1 (7th Cir. 2020). This reliance is significantly misplaced, as it actually detracts from Plaintiff's argument. In that case, there was a fundamental distinction not present in the instant action—the action filed by that plaintiff was originally filed in state court, as opposed to federal court, and as such did not fall under §1915(g) of the PLRA. Hill, 983 F.3d 904, 907. In making that fundamental distinction, the court said:

> It follows that the language in the opinions dismissing Hill's suit was proper—if this suit indeed comes within §1915(g). Which it does not. Section 1915(g) requires prepayment of the docket fees only if the plaintiff has thrice "brought an action or appeal in a court of the United States" only to have the suit or appeal decided on one of the listed grounds. Hill did not "bring" this suit in a court of the United States. He filed it in state court. Defendants brought it to federal court under §1441(a), but §1915(g) does not apply to complaints brought to federal courts by defendants.

*Id*. at *907.

In contrast, this Plaintiff cannot avail himself of that distinction, as his lawsuit originated in federal court and remains there. However, the *Hill* case does make clear that in an action such as this, assessment of a strike is absolutely proper in the event this Court dismisses the suit for

12

failure to state a claim, or otherwise determines the case is frivolous. See generally 28 U.S.C. § 1915(g), see also *Id*.

WHEREFORE, the Defendant, WEXFORD HEALTH SOURCES, INC., respectfully requests that this Honorable Court enter an Order: (1) Granting the Defendant Wexford's Motion to Dismiss; (2) dismissing Plaintiff's Amended Complaint [ECF #77] with prejudice; (3) terminating WEXFORD HEALTH SOURCES, INC. as a Defendant; (4) entering a strike against Plaintiff pursuant to the Litigation Reform Act, 28 U.S.C. § 1915(g); and (5) for any other relief deemed equitable and just.

              Respectfully submitted,

              CASSIDAY SCHADE, LLP

              By: /s/ *Stephen J. Gorski*

                One of the Attorneys for Defendant, WEXFORD HEALTH SOURCES, INC.

Matthew H. Weller (6278685)
Stephen J. Gorski (6306046)
CASSIDAY SCHADE LLP
973 Featherstone Rd., Suite 125
Rockford, IL 61107
(815) 962-8301
mweller@cassiday.com
sgorski@cassiday.com

**CERTIFICATE OF SERVICE**

    I hereby certify that on September 12, 2022, I electronically filed the foregoing document with the clerk of the court for Northern District of Illinois, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of E-Filing" to the attorneys of record in this case.

/s/ *Stephen J. Gorski*