IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| ERIC BERNARD (#R-25398), a/k/a/ TERRELL KING, | |
| Plaintiff, | Case No. 3:20-cv-50412 |
| v. | Hon. Iain D. Johnston |
| ILLINOIS DEPARTMENT OF CORRECTIONS and WEXFORD HEALTH SOURCES, INC., | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Eric Bernard is a serial filer, problematic inmate, and in the Court's experience a poor historian—at least occasionally. *See Bernard v. Scott*, 501 F. Supp. 3d 611, 618 n.4, 619, 620 (N.D. Ill. 2020). But Mr. Bernard is also a severely disabled inmate at the Illinois Department of Correction's Dixon Correctional Center ("Dixon"), who has sued Dixon and Wexford Health Sources, Inc. ("Wexford"), a healthcare provider at Dixon. Compl., Dkt. 77, ¶¶ 2, 16–26. Mr. Bernard alleges disability discrimination in violation of his rights under Titles II and III of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act. 42 U.S.C. §§ 12132, 12182; 29 U.S.C. § 794; Compl., Dkt. 77, ¶¶ 102–21.

Defendant Wexford now brings a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Dkt. 92.

As discussed below, Mr. Bernard's Title II claim fails because Wexford is an improper defendant. However, because Wexford is a proper defendant for Mr.

1

Bernard's Title III of the ADA and Rehabilitation Act claims, and because Mr. Bernard has pleaded sufficient facts concerning Wexford's denial of services or programs because of his disability, his Title III and Rehabilitation Act claims may proceed.

## BACKGROUND

Mr. Bernard's "life has been marked by tragedy." Compl., Dkt. 77, ¶ 3.[1] When he was nine, Mr. Bernard witnessed two murders. *Id.* He saw his father murder his mother, and, days later, witnessed his uncle murder his father. *Id.* After seeing these acts of violence, Mr. Bernard was left with post-traumatic stress disorder and "other lasting mental disabilities." *Id.* at ¶ 5. He also has been diagnosed with schizophrenia (bipolar), antisocial personality disorder, and borderline personality disorder. *Id.* at ¶ 18.

In March 2019, Mr. Bernard was an inmate at the Pontiac Correctional Center. *Id.* at ¶ 17. There, he attempted suicide and "suffered a stroke-like episode," that left him "unable to walk, stand, sit up on his own, or perform basic tasks like eating, bathing, and toileting." *Id.* at ¶¶ 6, 17.

Mr. Bernard was eventually transferred to Dixon in September 2019. *Id.* at ¶ 24. At Dixon, Mr. Bernard relies on a "Hoyer lift" (a tool used to lift Mr. Bernard into and out of his bed, into a chair, and into and out of a bathtub) and a geriatric chair (a chair that "allows him to remain reclining while staff transports him throughout the

---

[1] These facts are from the allegations in the complaint, dkt. 77, which the Court must accept as being true for purposes of resolving the motion to dismiss. *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001).

facility"). *Id.* at ¶¶ 28, 30. The Hoyer lift is "in a state of disrepair," *id.* at ¶ 29, and his geriatric chair has "broken cushioning and is otherwise unstable," *id.* at ¶ 30. Mr. Bernard has fallen out of both multiple times. *Id.* at ¶¶ 29, 30. Additionally, Wexford often relies on "untrained prisoners" to operate the Hoyer lift and geriatric chair and they often drop Mr. Bernard, causing him "further pain and suffering." *Id.* at 33.

Because of the medical staff's "unwillingness" to transport Mr. Bernard "without pain and risk of injury," Mr. Bernard cannot participate in outdoor activities, gym, recreation, educational classes, religious services, occupational therapy, rehabilitation, and other programming. *Id.* at ¶ 34. And for similar ambulatory reasons, he is unable to access the law library, *id.* at ¶ 48, dental care, *id.* at ¶ 74, group therapy sessions, *id.* at ¶ 84, and visitations. *Id.* at ¶¶ 91, 95.

What's more, "only one nurse and nurse's assistant are assigned to the Health Care Unit each shift." *Id.* at ¶ 36. Mr. Bernard, who has no control over his bowels, is "deprived of effective and immediate assistance when he needs a bath, change of clothes, or a diaper change." *Id.* Mr. Bernard is often left waiting hours on end in his own excrement. *Id.* at ¶ 37.

## STANDARD OF REVIEW

Pleading past the motion to dismiss stage is not a high hurdle. *See EEOC v. Concentra Health Serv. Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (identifying the "two-easy-to-clear-hurdles" of notice pleading). Federal Rule of Civil Procedure 8 requires that a plaintiff's complaint need only allege a short and plain statement establishing the basis for the claim and the Court's jurisdiction, as well as a prayer for the relief

3

sought. Fed. R. Civ. P. 8(a). According to the Supreme Court, this means that the complaint's factual allegations, rather than any legal conclusions, must raise the plausible inference that the defendant is liable for the complained of misconduct. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Because a motion to dismiss under Rule 12(b)(6) challenges the sufficiency of a complaint's allegations, setting aside exceptions not applicable in this case, the Court is typically limited to reviewing the complaint's factual allegations. *Holloway v. Shambaugh & Sons, Inc.*, 988 F. Supp. 2d 901, 911 (N.D. Ind. 2013). Factual allegations are taken as true, and *reasonable* inferences from the allegations are construed in favor of the plaintiff. *Alvarado*, 267 F.3d at 651. The defendant, as the moving party, bears the burden of establishing that the complaint's allegations, taken as true, are insufficient. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

## ANALYSIS

The parties first dispute whether Wexford is a proper defendant for claims arising under Titles II and III of the ADA and the Rehabilitation Act. They then dispute whether Mr. Bernard has adequately pleaded discrimination because of his disability. As discussed below, although Wexford is not a proper defendant for claims arising under Title II of the ADA, Wexford is a proper defendant for claims arising under Title III of the ADA and the Rehabilitation Act. Under Title III of the ADA and the Rehabilitation Act, Mr. Bernard has sufficiently pleaded discrimination based on his disability.

A. Wexford is an Improper Defendant under Title II of the ADA

4

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A "public entity" is a term of art. Under Title II of the ADA, a "public entity" includes "any State or local government," and "any department, agency, special purpose district, or other instrumentality of a State or States or local government." *Id.* at § 12131(1)(A)–(B).[2]

"It is not difficult to perceive the harm that Title II is designed to address." *Tennessee v. Lane*, 541 U.S. 509, 524 (2004). Indeed, "Congress enacted Title II against a backdrop of pervasive unequal treatment in the administration of state services and programs" for persons with disabilities. *Id.* at 524–25.

Specifically with respect to the prisons and prisoners, the Department of Justice's analysis of its implementing regulations provides:

> Prisons that are built or run by private entities have caused some confusion with regard to requirements under the ADA. The Department believes that title II obligations extend to the public entity as soon as the building is used by or on behalf of a state or local government entity, irrespective of whether the public entity contracts with a private entity to run the correctional facility. The power to incarcerate citizens rests with the state, not a private entity. As the Department stated in the preamble to the current title II regulation, "[a]ll governmental activities of public entities are covered, even if they are carried out by contractors." 56 FR 35694, 35696 (July 26, 1991). If a prison is occupied by state prisoners and is inaccessible, the state is responsible under title II of the ADA. In essence, the private builder or contractor that operates the correctional facility does so at the direction of the state government, unless the private entity elects to use the facility for something other than incarceration, in which case title III may apply. For that reason, the proposed § 35.152(a) makes it clear that this section's

---

[2] Though not relevant here, "the National Railroad Passenger Corporation and any commuter authority (as defined in section 24102(4) of Title 49)" are also public entities under Title II of the ADA. *See* 42 U.S.C. 12131(1)(C).

> requirements will apply to prisons operated by public entities directly or through contractual or other relationships.

Nondiscrimination on the Basis of Disability in State and Local Government Services, 73 Fed. Reg. 34,466, 34,495 (June 17, 2008).

Mr. Bernard first argues that the "first clause" of Title II targets the denial of a public entity's services, programs, or activities regardless of what party causes that denial or exclusion. Dkt. 107, at 7. "In other words, the only limitation is that the services, programs, or activities are those of a public entity." *Id.* Mr. Bernard goes on to argue that "when the public entity contracts with a third party to provide those services, that private entity also becomes capable of exclusion." *Id.* at 8. Mr. Bernard then argues that, in the alternative, Wexford is an "instrumentality" of Dixon Correctional Center and is therefore a "public entity." *Id.* at 9–13.

As discussed below, Mr. Bernard's arguments are unavailing, and Mr. Bernard's Title II claim against Wexford is dismissed.

First, liability under Title II of the ADA remains with the "public entity." Mr. Bernard argues to the contrary and draws support from the DOJ's preamble to its Title II regulation, which explains that "[a]ll governmental activities of public entities are covered, even if they are carried out by contractors." *Id.* at 8 (citing 56 FR 35694). Mr. Bernard also argues that, as per DOJ regulation, Title II's protections apply to services provided at correctional facilities, including those provided "either directly or through contractual, licensing, or other arrangements with public or private entities, in whole or in part . . . ." *Id.* at 8 (quoting 28 C.F.R. § 35.152(a)). Although it is true that Title II of the ADA may cover a private contractor's actions, liability for such conduct remains with the "public entity." *See Lee v. Corrs. Corp. of America/Corr. Treatment Facility*, 61 F.

6

Supp. 3d 139, 141 n.2 (D.D.C. 2014) (analyzing the same regulation and determining liability under Title II does not extend to private contractors who operate a private prison facility).

Mr. Bernard then argues that Wexford is a "public entity" because it is an "instrumentality" of Dixon. Dkt. 107, at 9–13. Wexford, of course, disagrees. *See* Dkt. 92, at 2–4; Dkt. 107 at 9–13.

"Although the Seventh Circuit has not directly addressed this question, an emerging consensus from other circuits suggests that Wexford is not an instrumentality within the meaning of the ADA." *Eby v. Okezie,* No. 19 C 8404, 2021 U.S. Dist. LEXIS 172595, at *14–15 (N.D. Ill. Sept. 13, 2021); *see Edison v. Douberly*, 604 F.3d 1307, 1310 (11th Cir. 2010) (holding "a private corporation is not a public entity merely because it contracts with a public entity to provide some service"); *Green v. N.Y.C.,* 465 F.3d 65, 79 (2d Cir. 2006) ("A private hospital performing services pursuant to a contract with a municipality even if it does so according to the municipality's rules and under its direction, is not a creature of any governmental entity.").

And the prevailing view of district courts within this Circuit suggests the same. *Bradley v. Wexford, Inc.,* No. 19-cv-00752-SMY, 2019 U.S. Dist. LEXIS 131560, at *4 (S.D. Ill. Aug. 6, 2019) (Wexford is not a "public entity" under the ADA); *Peters v. Butler,* No. 16-CV-382-NJR-MAB, 2019 U.S. Dist. LEXIS 47094, at *6 (S.D. Ill. Mar. 21, 2019) (same); *Morris v. Baldwin,* No. 17-cv-1033-DRH-RJD, 2018 U.S. Dist. LEXIS 213870, at *5 (S.D. Ill. Dec. 3, 2018) (same); *Hogle v. Baldwin,* No. 17-cv-01059-JBM-JEH, 2017 U.S. Dist. LEXIS 150753, at *14 (C.D. Ill. Sept. 17, 2018)

7

(same); *see also McIntosh v. Corizon*, No. 14-cv-00099-JMS-MJD, 2018 U.S. Dist. LEXIS 47837, at *16 (S.D. Ind. Mar. 23, 2018) (holding that a private medical contractor is not a public entity under the ADA). The Court finds the Second Circuit's rationale particularly compelling. *Green*, 465 F.3d at 78–79.[3] In *Green*, the plaintiff argued that the private St. Luke's-Roosevelt Hospital was a "public entity" because it "carried out a public function pursuant to a contract with [New York] City, in accord with City rules, and under the direction of City employees." *Id.* at 78. Because a private hospital is not a "state or local government" or a "department, agency, or special purpose district" thereof, the Second Circuit was left to "determine whether 'instrumentality,' 42 U.S.C. § 12131(1)(B), was meant to include private hospitals that contract with a municipality to provide services." *Id.*

First, the court looked to the "text" of the statute to determine if the term "instrumentality" has a "plain meaning" or if it is ambiguous. *Id.*

The court found that the term "instrumentality" is ambiguous because it is susceptible to more than one meaning. *Id.* at 79. On one hand, an instrumentality may "mean 'something by which an end is achieved.'" *Id.* (quoting Websters Third New International Dictionary 1172). This definition "supports the conclusion that a hospital that contracts with a municipality to provide services is an instrumentality." *Id.* On the other hand, an instrumentality may also mean 'a part, organ, or subsidiary branch, esp. of a governing body.'" *Id.* (quoting Websters Third New International

---

[3] The Third, Tenth, and Eleventh Circuits do, as well. *Matthews v. Pennsylvania Dep't of Corrs.*, 613 F. App'x 163, 170 (3d Cir. 2015); *Phillips v. Tiona*, 508 F. App'x 737, 754 (10th Cir. 2013); *Edison*, 604 F.3d at 1310.

Dictionary 1172). This definition "suggests that to be an instrumentality, an entity must somehow belong to the government or have been created by it." *Id.*

Because the term "instrumentality" is ambiguous, the court then relied on canons of statutory interpretation for insight. *Id.* The maxim *noscitur a sociis*— "that a word is known by the company it keeps"—instructs the court to review the term "instrumentality" alongside the context in which the word appears. *Id.*

"Instrumentality" is "one of a string of words that includes 'agency,' 'department,' and 'special purpose district." *Id.* Each word in the "string of words is qualified by 'of a State or States or local government.'" *Id.* Of course, agencies and departments are units of a governmental entity. *Id.* And "special purpose districts," at least in Illinois, are units of local government created by municipalities to "provide a single service or group of services," such as fire protection, mosquito abatement, or water supply.[4] Thus, the word "instrumentality" must also be "read as referring to a creature of a state or municipality." *Id.* Therefore, as the court explains, "[a] private hospital performing services pursuant to a contract with a municipality even if it does so according to the municipality's rules and under its direction, is not a creature of any government entity. Instead it is a parallel private entity." *Id.* Liability under Title II of the ADA does not extend to such parallel private entities. *Id.* The court

---

[4] *See* Legislator's Guide to Local Governments in Illinois, Special Districts, Illinois Commission on Intergovernmental Cooperation, at iii (2003). States vary with respect to the use of the term "special purpose district" or "special district." In Illinois, they are "special districts." *Id.* In New York, they are "special purpose districts." *See Green*, 465 F.3d at 79. The *Green* court defined "special purpose district" under New York law. 465 F.3d at 79. "Special purpose districts" and "special districts" generally refer to the same type of governmental entity.

9

concluded by noting that it was unable to find "any canon of construction or legislative history that would require a different result." *Id.*

Having reviewed the persuasive authorities, the Court concludes that Wexford is not a "public entity" and grants Wexford's Motion to Dismiss Count I.

B. Wexford is a Proper Defendant under Title III ADA.

Unlike Title II of the ADA, Title III of the ADA covers certain private entities. 42 U.S.C. § 12182(a). Title III of the ADA prohibits "discrimination on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." *Id.* A private entity is considered to offer public accommodations "if the operations of such entities," including the "professional office of a health care provider, hospital, or other service establishment," affects commerce. 42 U.S.C. 12181(7)(F). "Commerce" is defined as "travel, trade, traffic, commerce, transportation, or communication . . . among the several States." 28 C.F.R. § 36.104.

> Wexford argues that:
>
> a prison does not engage in activities that affect commerce, and the delivery of health care services to inmates—who are wards of the state[—]does not amount to economic activity. Rather, Wexford provides constitutionally mandated treatment to inmates within the walls of the Dixon Correctional Center. It does not invite the general public to come into the prison for medical treatment, and inmates do not engage in economic activity by seeking treatment within the walls of the prison.

Dkt. 92, at 5–6.

Mr. Bernard retorts that "irrespective of whether prisoners are themselves paying for medical services," Wexford's operations "affect commerce" because Wexford, a Pennsylvania company, "contracts with states across the country and regularly communicates with its corporate officers and local providers in Illinois and elsewhere." Dkt. 107, at 18.

The complaint alleges that Wexford, a Pennsylvania company, contracts with IDOC to provide medical healthcare at IDOC prisons, including Dixon. *See* Compl., Dkt. 77, ¶¶ 16, 121. Taking all factual allegations as true and drawing all reasonable inferences from these facts in favor of Mr. Bernard, Mr. Bernard has sufficiently alleged that Wexford is a private entity that offers public accommodations. *See Alvarado*, 267 F.3d at 651; *Stafford v. Wexford*, 17-cv-00289-JMS-MJD, 2017 U.S. Dist. LEXIS 166994, at *6–7 (S.D. Ind. Oct. 10, 2017) (finding that Wexford is a proper defendant for claims arising under Title III of the ADA); *see generally Wickard v. Filburn*, 317 U.S. 111, 120 (1942). Therefore, Wexford is a proper defendant for claims arising under Title III of the ADA.

C. Wexford is a Proper Defendant under the Rehabilitation Act.

"The ADA and Rehabilitation Act have the same standards, except the Rehabilitation Act includes as an additional element the receipt of federal funds by the defendant." *Edwards v. Ill. Dep't of Fin.*, 210 F. Supp. 3d 931, 944 (N.D. Ill. 2016) (citing *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671–72 (7th Cir. 2012)).

Wexford first argues that it is not a proper defendant for claims arising under the Rehabilitation Act because the "Seventh Circuit has rejected Rehabilitation Act

11

claims against a party that receives federal funds indirectly via a contract with a state." Dkt. 92, at 4–5 (quoting *Eby*, 2021 U.S. Dist. LEXIS 172595 at *16). Wexford goes on to claim that "Wexford is a private company that contracts with the State of Illinois to provide medical care and treatment" throughout the Illinois Department of Corrections. *Id.* at 5. So, according to Wexford, the Illinois Department of Corrections—not Wexford—is the appropriate defendant. *Id.*

The problem with this argument is that Mr. Bernard specifically alleges that "Wexford is a recipient of federal funds." Compl., Dkt. 77, ¶ 16; *see also id.* at ¶ 113 ("Both IDOC and Wexford receive federal financial assistance and offer programs and activities to prisoners incarcerated at Dixon."). The Court assumes this critical allegation was made with reasonable inquiry. Fed. R. Civ. P. 11(b). Although discovery may prove Wexford correct, at this stage in the litigation, Mr. Bernard's allegation of federal funding is sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Edwards*, 210 F. Supp. 3d at 944. If discovery establishes that there is no genuine dispute of fact that Wexford is a recipient of federal funds, this would be an excellent argument for summary judgment. Thus, Wexford is a proper defendant for claims arising under the Rehabilitation Act.

D. Mr. Bernard Sufficiently Alleges Discrimination based on his Disabilities.

Because "[t]he standards under the ADA and Rehabilitation Act are 'functionally identical,'" and because the parties discuss the merits of the ADA and Rehabilitation Act claims together, the Court considers both claims together. *See Eby*, 2021 U.S. Dist. LEXIS 172595, at *16 (quoting *Jaros*, 684 F.3d at 672).

12

The ADA and Rehabilitation Act "provide expansive protections from discrimination for individuals with disabilities." *A.H. by Holzmueller v. Ill. High School Assoc.*, 881 F.3d 587, 592 (7th Cir. 2018). To state a claim under the ADA and Rehabilitation Act, Mr. Bernard must allege that: (1) "he is a qualified individual with a disability"; (2), that he was "denied the benefits of the services, programs, or activities" by a proper defendant; and (3), that the "denial or discrimination was by reason of his disability." *See Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015); *Price v. Ill. Dep't of Corrs.*, 18 C 5358, 2022 U.S. Dist. LEXIS 62729, at *6 (N.D. Ill. Apr. 4, 2022). Under the ADA and Rehabilitation Act, disability discrimination can be established if the defendant refuses to provide reasonable modifications or accommodations to disabled individuals. *Jaros*, 684 F.3d at 672.

Here, the parties do not dispute that Mr. Bernard—who has "severe mental illnesses" and is "unable to walk, stand, sit up on his own, or perform basic tasks like eating, bathing, and toileting"—is a qualified individual with a disability. *See* Compl., Dkt. 77, at ¶¶ 6, 18. And the Court has already determined that Wexford is a proper defendant for claims arising under Title III of the ADA and the Rehabilitation Act. *See* supra, at 4–12. Thus, the Court need only address whether Mr. Bernard has sufficiently alleged discrimination based on his disability. *See Wagoner*, 778 F.3d at 592; *Price*, 2022 U.S. Dist. LEXIS 62729, at *6.

Mr. Bernard contends that he adequately pleaded the denial of services, programs, or activities based on his disability by claiming, in part, based on the following: he could not attend outdoor recreation because of "operational" constraints;

13

he could not access religious and educational programming, visitation services, personal hygiene services, and legal services due to the "refusal to accommodate" Mr. Bernard's "extensive disabilities"; and he could not toilet without risking sexual assault because of the lack of toileting accommodations. *See* Dkt. 107, at 18–29. These are, of course, such "services, programs, or activities" contemplated by the ADA and RA. *Wagoner*, 778 F.3d at 592; *Love v. Westville Corr. Cent.*, 103 F.3d 558, 558–59 (7th Cir. 1996).

Wexford nonetheless contends that Mr. Bernard's claims under the ADA and Rehabilitation Act are thinly veiled complaints concerning Mr. Bernard's dissatisfaction with Wexford's medical care, for which neither the ADA nor the Rehabilitation Act provide a remedy. *See* Dkt. 92, at 6–10. In other words, Mr. Bernard's "specific complaints do not demonstrate that [Wexford] is denying him access to services that other inmates enjoy, rather, Mr. Bernard is simply dissatisfied with the additional care that is being provide to him because of his disability." *Id.* at 10.

The Court disagrees with Wexford's cabined reading of Mr. Bernard's complaint. Indeed, as the Court reads the complaint, Mr. Bernard is alleging that because of Wexford's failure to provide Mr. Bernard with reasonable and needed medical accommodations (for both physical and mental conditions), he cannot engage in the outdoor recreation, take advantage of religious and educational programming, enjoy visitation or telephone services, or simply toilet without risking sexual assault. *See* Dkt. 107, at 18–29.

The Court understands Wexford's argument, but it is one that fails at the motion to dismiss stage based on the allegations in the complaint before the Court. Discovery may ultimately support Wexford in a subsequent motion for summary judgment. The Court will take up that issue if it is presented in that context.

Accordingly, Mr. Bernard's Title III of the ADA and Rehabilitation Act claims suffice at this stage of the litigation.

## CONCLUSION

For the reasons given, the Court grants Wexford's request to dismiss Mr. Bernard's Title II of the ADA claim against Wexford (Count I). The Court denies Wexford's request to dismiss Mr. Bernard's Rehabilitation Act and Title III of the ADA claims against Wexford (Counts II and III).

Date: November 30, 2022

                                                                               Honorable Iain D. Johnston
                                                                               United States District Judge