UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Eric E. Bernard,<br><br>      Plaintiff,<br><br>  v.<br><br>Illinois Department of Corrections and Wexford Health Sources, Inc.,<br><br>      Defendants. | Case No. 3:20-cv-50412<br><br>Honorable Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Eric E. Bernard, a severely disabled individual incarcerated at the Illinois Department of Corrections' Dixon Correctional Center, brings this suit under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act of 1973 against Defendants Illinois Department of Corrections ("IDOC") and Wexford Health Sources, Inc. ("Wexford").

Mr. Bernard now moves for a temporary restraining order and preliminary injunction requiring IDOC to provide toileting accommodations immediately. For the following reasons, his motion is granted. This order functions as the required order under Rule 65(d). Fed. R. Civ. P. 65(d).

Before addressing Mr. Bernard's motion, the Court notes that IDOC failed to respond—at all. IDOC didn't even bother to file a response indicating that it didn't contest the relief sought. By failing to make these even minimal efforts, IDOC not only required the Court to expend time and resources on this motion, but also

1

subjected the State of Illinois (and its already overburdened taxpayers) to likely significant attorneys' fees incurred by Mr. Bernard's experienced and competent counsel. IDOC and the Illinois Attorney General's Office must do better.

## I. Background

Mr. Bernard is incarcerated at Dixon Correctional Center. Around March 2019, he attempted suicide, during which he suffered a stroke and became nearly fully paralyzed. Dkt. 145-1 at 1. He needs assistance with most daily activities—including walking, standing, bathing, changing clothes, eating, or using a toilet. Dkt. 145-2 ¶¶ 14-15. He also has severe mental illnesses, including schizophrenia (bipolar) and post-traumatic stress disorder. *Id.* ¶ 13.

Mr. Bernard has no control over his bowels, so he wears a diaper and a catheter, both of which need to be replaced regularly. *Id.* ¶¶ 16-17. If he needs to travel to or from Dixon, he needs a nurse to accompany him and a vehicle with a urinal or toilet. *Id.* ¶¶ 18-19. IDOC assigns only one nurse and nurse's assistant for each shift, and it has only one onsite ambulance. *Id.* ¶¶ 20-21. As a result, there is no nurse available to accompany Mr. Bernard if he needs to leave Dixon, and there is often no ambulance available to transport him. *Id.* For example, he has had an MRI repeatedly canceled and rescheduled. Because the ambulance was unavailable, he had appointments canceled on November 25, 2019; February 8 or 9, 2022; and May 18, 2022. *Id.* ¶ 23. Then, on July 27, 2022, the ambulance was available, but a nurse was not, so Mr. Bernard arrived with a soiled diaper, leading to yet another cancelation. *Id.* ¶ 24. The same has played out with Mr. Bernard's court hearings.

In 2020, the lack of transportation led to Mr. Bernard being unable to appear in court, seeking a continuance, and ultimately losing his parental rights. *Id.* ¶¶ 27-34.

Mr. Bernard has two claims against IDOC—one under Title II of the ADA and another under the Rehabilitation Act. He also has a claim under Title III of the ADA against Wexford. Mr. Bernard seeks a temporary restraining order and preliminary injunction requiring IDOC to provide toileting accommodations immediately.

## II. Legal Standard

Though the two motions have differing results, the legal standard employed on a motion for a temporary restraining order is the same as that for a preliminary injunction. *Mays v. Dart*, 453 F. Supp. 3d 1074, 1087 (N.D. Ill. 2020). The Seventh Circuit has split the analysis into two phases: a threshold phase and a balancing phase. *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1044 (7th Cir. 2017). A plaintiff must overcome the threshold analysis by showing that (1) the plaintiff will suffer irreparable harm in absence of court intervention, (2) that traditional legal remedies are not adequate, and (3) that the plaintiff has a likelihood of success on the merits. *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). If the plaintiff passes the threshold analysis, courts proceed to a balancing test, in which the Court weighs the harm the plaintiff would suffer in absence of the preliminary injunction with the harm the defendant would incur if the Court granted the injunction. *Mays*, 974 F.3d at 818. The Court must also balance the harm faced by the public as a whole. *Whitaker*, 858 F.3d at 1054; *see also Courthouse News Serv. v. Brown*, 903 F.3d 1063, 1068 (7th Cir. 2018).

### III. Analysis

Mr. Bernard requests that IDOC be ordered to provide toileting services, and he does not make the same request for Wexford. Understandably, Wexford argues that Mr. Bernard has not made a showing that a preliminary injunction would be justified against Wexford. *See* Dkt. 155 at 1-2.

Unlike Wexford, IDOC has not filed a response to Mr. Bernard's motion. By failing to respond to Mr. Bernard's motion, IDOC has waived any arguments opposing the preliminary injunction. *See Bonte v. U.S. Bank, N.A.*, 924 F.3d 461, 466 (7th Cir. 2010). The Court finds that Mr. Bernard has made a sufficient showing for each requirement for a preliminary injunction against IDOC.

#### A. Likelihood of Success on the Merits

Under the likelihood of success analysis, the plaintiff must show "more than a mere possibility of success." *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020). Indeed, the plaintiff faces a "significant burden" that stops short of requiring proof by a preponderance of the evidence but nonetheless requires a strong showing. *Id.* at 763. That showing "normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.*

Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, the Rehabilitation Act states that no "qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of,

4

or be subjected to discrimination." 29 U.S.C. § 794(a). The difference with the Rehabilitation Act is that it requires an entity to receive federal funds. *See Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012).[1] The Seventh Circuit has held that for all practical purposes, Title II of the ADA and the Rehabilitation Act are the same. *Shaw v. Kemper*, 52 F.4th 331, 334 (7th Cir. 2022). Both also require a prison to make reasonable modifications to its policies or practices to avoid discrimination. *Id.*

Mr. Bernard has sufficiently argued that he has some likelihood of success with his claim against IDOC. As a state entity, IDOC is a public entity covered by the ADA. *See* 42 U.S.C. § 12131(1)(B). Mr. Bernard is a qualified individual with a disability, as the Seventh Circuit has found that confinement to a wheelchair and incontinence can render an individual disabled under the ADA and Rehabilitation Act. *See Shaw*, 52 F.4th at 334; Dkt. 145-1 at 13.

As for IDOC denying Mr. Bernard access to services, a failure to make reasonable modifications can constitute discrimination. *Shaw*, 52 F.4th at 334. More specifically, the Seventh Circuit has found that a prison failing to make available a handicapped-accessible toilet for a disabled individual could amount to denial of a service under the ADA or Rehabilitation Act. *See id.* In this case, IDOC has not ensured that Mr. Bernard's diaper and catheter are changed regularly or that he has access to transportation with a toilet. As a result of IDOC's failure, Mr. Bernard has been denied access to hygiene services, medical care, and the courts—

---

[1] IDOC has not disputed that it receives federal funding.

not only enduring painful sores and rashes from sitting in his own excrement and urine for prolonged periods of time, but also being forced to miss appointments and hearings when he has arrived soiled. Dkt. 145-1 at 14.

### B. Adequacy of Traditional Legal Remedies

The moving party must also show that without the preliminary injunction or temporary restraining order, there would be no adequate remedy at law (such as money damages). *Whitaker*, 858 F.3d at 1046; *Boucher v. School Bd. of the Sch. Dist. of Greenfield*, 134 F.3d 821, 823 (7th Cir. 1998). This means "that any award would be 'seriously deficient as compared to the harm suffered.'" *Id.* If it's not practicable to calculate damages to remedy the kind of harm suffered, then no remedy at law can be adequate. *See Foodcomm Int'l v. Barry*, 328 F.3d 300, 304 (7th Cir. 2003).

Monetary relief "cannot adequately compensate for a known risk to [an individual's] health that could be presently addressed." *See Foster v. Ghosh*, 4 F. Supp. 3d 974, 983 (N.D. Ill. 2013). Mr. Bernard experiences ongoing pain from his rashes and sores, which result from IDOC's failure to provide him with accessible toileting. Dkt. 145-1 at 16. Those sores get infected when he is forced to sit in his excrement, creating further health risks. *Id.* at 17. He also has been experiencing neurological symptoms but has been unable to see a neurologist because of the missed appointments. *Id.* at 16. These are known risks to Mr. Bernard's health that can be presently addressed—indeed, since the filing of Mr. Bernard's motion, he has had to sit in his own excrement while traveling to medical appointments, one of which was canceled, Dkt. 156 at 3—and so the Court finds that monetary relief would be inadequate. *See Foster*, 4 F. Supp. 3d at 983.

### C. Irreparable Harm

The Seventh Circuit has defined "irreparable harm" as "harm that 'cannot be repaired' and for which money compensation is inadequate." *Orr v. Shicker*, 953 F.3d 490, 502 (7th Cir. 2020). The moving party must show "more than a mere possibility of harm" absent obtaining the requested relief. *Id.* (quoting *Whitaker*, 858 F.3d at 1044). As explained above, the harm that Mr. Bernard suffers cannot be adequately compensated monetarily, and the harm is real and ongoing. He also argues that the consequences of missing doctors' appointments and court hearings are irreversible. Dkt. 145-1 at 17. The Court finds that Mr. Bernard would suffer irreparable harm without an injunction.

### D. Balance of Equities

Having found that Mr. Bernard has met the threshold requirements, the Court must balance the harms faced by both parties and the public as a whole. *Whitaker*, 858 F.3d at 1054. This analysis takes a sliding scale approach. *Mays*, 974 F.3d at 818. The Court weighs the harm the plaintiff would suffer in absence of the preliminary injunction with the harm the defendant would incur if the Court granted the injunction: "the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." *Id.*

The Court finds that the balance of harms weighs in Mr. Bernard's favor. Without an injunction, Mr. Bernard would continue to experience the physical pain, and he would continue missing court hearings and medical appointments. Dkt. 145-1 at 18. Whereas for IDOC, Mr. Bernard argues that the cost of providing a nurse

7

and toileted vehicle is the cost of legal compliance. *Id.*[2] And by failing to file a response, IDOC did not bother to explain how this could pose any undue burden on it. Wexford's response that the injunction would harm it is rooted in the fact that attending to Mr. Bernard's toileting and transit needs is within IDOC's purview, further supporting that IDOC is the entity that should be accommodating Mr. Bernard. *See* Dkt. 155 at 5.

As for balancing the requested injunctive relief with the public interest, Mr. Bernard argues that ensuring toileting accommodations for Mr. Bernard aligns with the goals and values of the ADA and Rehabilitation Act. Dkt. 145-1 at 18-19. Given that Mr. Bernard seems likely to succeed on the merits of his claim, as explained above, the Court finds that this is sufficient to show that the balance of harms does not weigh against Mr. Bernard.

## IV. Conclusion

The Court finds that Mr. Bernard has met the threshold requirements for a preliminary injunction and a temporary restraining order against IDOC and that the balance of harms weighs in Mr. Bernard's favor. Mr. Bernard's motion is granted. IDOC is ordered to ensure that Mr. Bernard is accompanied by a nurse and has access to toileting during transport, including to and from doctors' appointments and court proceedings.

---

[2] Indeed, that this is merely complying with the law isn't just an argument about what the ADA and Rehabilitation Act require: in state court proceedings concerning Mr. Bernard, IDOC has been ordered to provide reasonable accommodations so that Mr. Bernard can be present in court. Dkt. 145-1 at 9.

This order binds IDOC; IDOC's officers, agents, servants, employees, and attorneys; and other persons who are in active concert or participation with these entities and individuals. And, to be specific, this order binds the Director of the Illinois Department of Corrections in his official capacity. These entities and individuals are on notice that this order will be enforced through the Court contempt authority. Counsel for IDOC must notify these entities and individuals of this order and its contents, and by December 22, 2023, file a certificate with the Court that it has provided actual notice of this order and its contents to these entities and individuals, explaining how the notice was provided. Fed. R. Civ. P. 65(d)(2).

Date: December 14, 2023

                                                                  Honorable Iain D. Johnston
                                                                   United States District Judge